115  257
a215s 369

# James Triggs v. Agnes McIntyre, by her next friend, et al.

## Gen. No. 4,344.

1. DEATH—*when, deemed result of intoxication.* Death, within the meaning of the law, so as to render the owner of saloon premises and the keeper thereof liable to the next of kin, is deemed to have resulted from intoxication caused by such defendants, where it appears that such death was the result of the deceased's inability to make a volun-

tary effort to save himself, as, for instance, in this case, from suffocation by reason of the position in which his body had fallen.

2. FORM OF VERDICT—*when failure to give particular, not reversible error.* In an action on the case it is not error for the court to fail to give to the jury a form of verdict that they may find one defendant guilty and the other not guilty; if the defendants, or either of them, desire such an instruction, they or the one so desiring it should request the giving of the same.

3. EXCLUSION OF EVIDENCE—*when, will not reverse.* The exclusion of competent evidence will not reverse unless it appears that some harm has resulted to the complaining party.

Action on the case under Dram-Shop Act. Appeal from the Circuit Court of Lake County; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at April term, 1904. Affirmed. Opinion filed August 24, 1904.

JAMES L. O'DONNELL, CHARLES WHITNEY and PAUL MAC-GUFFIN, for appellant.

QUINN & QUINN and E. WAYNE COLBY, for appellees.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

The declaration in this case charges that appellant was the owner of a building wherein he permitted Bernard H. Anderly, who was also a defendant with appellant, to conduct a saloon for the sale of intoxicating liquors; that while said Anderly so occupied the building of appellant he sold and gave intoxicating liquors to John P. McIntyre, causing him to become intoxicated, in consequence of which he died, and that he left surviving him appellees as his widow and child. The jury returned a verdict for appellees for $2,500 upon which judgment was rendered, and appellant, one of the defendants, prosecutes this appeal.

The evidence shows that the deceased, McIntyre, was between thirty-five and forty years of age, and at the time of his death was engaged as a tower-man at the crossing of the E. J. & E. and St. Paul Railway at Libertyville. On the evening of September 11, 1902, after deceased had his supper, he visited the saloon of Anderly in appellant's building, and while there took several drinks of whisky. There is

some difference of opinion among the witnesses as to the extent he appeared to be intoxicated when he left the building, some two hours later than when he entered it, but that he was very much intoxicated we think there can be no doubt. Deceased left the saloon in company with the witness Lightbody, who says he was much intoxicated, and that when they had reached a place near a lumber yard, deceased stopped, laid down and went to sleep; that he tried to wake him, but failing to do so, went back to the saloon to report his condition and inquire where McIntyre lived, as the witness did not know. Spellman, the barkeeper, went with Lightbody back to the place where he had left McIntyre and found him lying there unconscious, but breathing regularly. This was about one-fifth of a mile from the hotel where the saloon was. While Lightbody and Spellman were debating what to do with McIntyre, a Mr. Galloway came along and the three together carried him into a lumber shed made of rough boards that was near by. Both Lightbody and Galloway testified that when they placed McIntyre in the shed he was breathing easy like one asleep. He was not seen nor heard of again until the next afternoon when his dead body was found in the shed. His head was placed by the parties who carried him into the shed the night before, on a six-inch tile that stood up above the surface of the ground about four inches. When found the next afternoon the body was lying partly on the stomach and left side, with the face inclined downward and toward the right. There was no money or valuables on his person and his pockets were turned inside out. His face was distorted, tongue slightly between his teeth, throat much swollen or enlarged and a broken place in the skin on the nose, also an indentation or bruise about the edge of the hair on the left side near the temple, and a cut in the skin above the forehead about the hair line from which no blood came. The same witness who testified to these facts further testified that there was no blood on the face but a kind of bloody froth was being discharged from the nose, and "that the larynx was loosened so that it could be

moved from side to side quite a distance." Two inquests and one autopsy were held and it was shown by the medical testimony and is not controverted, that the immediate cause of death was suffocation, and the principal contention in this case is that the evidence fails to show the death to have been the direct result of the intoxication. The theory of appellant is that McIntyre was murdered and it is argued that the evidence supports this theory. The condition of the pockets of McIntyre and absence of his watch make it reasonably certain that the body was robbed, but we do not think it appears from the evidence that death resulted from violence. The marks and bruises testified to as being upon the person of McIntyre when his body was found were not of a serious character, nor such as would be expected to be found upon the person of a man whose death had resulted from violence. No bones were broken and there appears to have been no bruises or finger marks on the throat such as would have naturally resulted from the use of such force as to cause strangulation or suffocation. Dr. Weil, who conducted the autopsy and appears to have been a very fair and intelligent witness, testified that there was apparently nothing in the external injuries that would cause death, but that the condition of the heart, brain, and engorged condition of the lungs showed that death resulted from an insufficient supply of oxygen. To our minds the evidence supports the conclusion that suffocation was caused, not by external violence, but because of the deceased's inability to extricate himself from some position in which his neck and body had become placed while he was in a stupor from intoxication. The evidence conclusively shows that he was in a very advanced stage of intoxication when placed in this lumber shed, was wholly unconscious and could not be aroused by his companion. From his condition at that time, taken in connection with the position of his body when found the next day and its appearance, we think it not an unreasonable conclusion from the evidence that in his drunken stupor his neck and mouth got in some position that prevented the passage of air into the lungs, and

being unable to make any voluntary effort to help himself and unconscious of his condition, he died from suffocation. If his death was the result of suffocation in this manner, then it would be the result of intoxication within the meaning of the law.   Schroder v. Crawford, 94 Ill. 357, and cases there cited.

The court instructed the jury that if they found the defendants guilty the form of the verdict might be, "We, the jury, find the defendants guilty, and assess the plaintiffs' damages at ——— dollars;" that if they found defendants not guilty the form of the verdict would be, "We, the jury, find the defendants not guilty." It is insisted the failure to instruct the jury that they might find one defendant guilty and one not guilty was reversible error.   It is not denied that appellant was the owner of the building in which the saloon was being conducted where McIntyre got the whisky that caused his intoxication, nor is it denied that appellant knew Anderly was occupying and using it as a saloon for the sale of intoxicating liquors.   The statute gives a right of action in such cases against both the saloon keeper "and any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, or who, having leased the same for other purposes, shall knowingly permit therein the sale of any intoxicating liquors that have caused in whole or in part the intoxication of any person," etc.   Hurd's Revised Statutes, chap. 43, sec. 9.   Under the evidence, therefore, it is a little difficult to understand how one of the defendants might have been found guilty and the other not guilty.   But if it had been a case where counsel were of opinion that under the evidence one defendant might be found guilty and one not guilty, they should have requested the court so to instruct the jury.   We think no error was committed by the court in its rulings upon the instructions.

Complaint is also made that the court excluded certain evidence of Mary Mason, a witness for appellant.   She testified in substance that at the time of McIntyre's death she

lived in the neighborhood of the lumber shed where the body was found, and that the night before the day his dead body was found, between 10 and 11 o'clock, she heard loud talking and swearing and a sort of scuffling in that direction, and that from what she heard it sounded like a fight. She also testified that at that time there was a camp of strangers about a half mile from that place who were working on a railroad; that they had been there all summer and came into town of nights and were very noisy. This testimony was heard subject to objection, and afterwards, on motion of appellees, excluded, and in excluding it we think no prejudicial error was committed. The greater portion of it was incompetent and irrelevant, and what little of it might have been competent was of a nature to be of no value whatever, that we can see, to appellant.

The judgment is affirmed.

*Affirmed.*